In the Matter of Proving the Last Will and Testament of HARRIET C. NASH, Deceased.

HATTIE J. GREEN, Appellant; EDWARD L. WARE, as Executor, etc., of HARRIET C. NASH, Deceased, Respondent.

*Attestation clause — it does not establish the due execution of a will, where the testimony of the subscribing witnesses contradicts its terms.*

While an attestation clause annexed to a will may, in the event of the failure of the subscribing witnesses to recollect what took place at the time of the execution of the will, be received in support of the probability of the due execution thereof, such a clause is not sufficient to prove the due execution of the will as against the distinct recollection of both the subscribing witnesses that the formalities required by the statute were not observed at the time the will was executed.

APPEAL by Hattie J. Green, from a decree of the Surrogate's Court of Essex county, entered in said Surrogate's Court on the 10th day of March, 1902, admitting the will of Harriet C. Nash to probate.

*Thomas B. Cotter*, for the appellant.

*Richard Lockhart Hand*, for the respondent.

SMITH, J.:

The sole objection to the probate of the will in suit is to the proof of its execution. The only witnesses offered by either party were the two subscribing witnesses to the will. The evidence of these witnesses fails to show due conformity on the part of Harriet Nash to the requirements of the statute (2 R. S. 63, § 40) necessary to constitute a valid will. The learned surrogate, however, has admitted the will to probate solely upon the faith of the attestation clause which precedes the signatures of the alleged witnesses. It has been held in numerous cases that, where the witnesses fail to recollect the circumstances under which the will was executed, the attestation clause may be referred to in support of the probability of due execution. But an attestation clause is simply the declaration of the witnesses to the will. It is not a necessary part of the will. The declarations of a witness are not ordinarily competent evidence of a fact. While this declaration of the attesting witnesses seems to be an exception to the rule, and in certain cases has authorized the admission of the will to probate in face of the entire forgetfulness of the witnesses as to what did occur, I am referred to no authority which goes so far as to hold this declaration to be proof of the fact of due execution as against the distinct recollection of the witnesses that the formalities required by the statute were not observed. This will was executed upon the 16th day of April, 1900. The witnesses were two of the testatrix's neighbors who, so far as appears, were in no way associated with the contestants, nor had they any reason to vary from the exact truth in their testimony. The witnesses were called upon to swear to their recollection in July, 1901, a little over a year after the transaction occurred. The witness Newell swears that he was asked by Mr. Ware to come over and witness some paper; that he entered the dining room, where was Mrs. Nash. "Mr. Ware

brought the paper and laid it down on table and asked us to sign it. That was all I recollect; nothing said to me about a will. I was not sure it was a will at that time; that was 16th April, year ago, I presume. That is my recollection. This paper was the one laying on table and we signed it there in her presence. I don't think Ware read anything. I have no recollection that he did." Upon cross-examination, he further swore: "Mrs. Nash spoke and said, are you all ready to have these papers signed? Mr. Ware said yes, the papers were there ready to be signed. He had the paper in his hand and laid it on the dining-room table. Don't remember how it laid. The sheet we signed was on top. I did not hear Mrs. Nash say anything else. She went up to the table and said, shall I sign here? He said yes, and she signed. Mr. Ware said, one of you sign here and the other below. Mr. Ware pointed to where I was to sign. Mrs. Nash after signing stepped back. We were not there over ten minutes. She did not say anything to me. Mr. Ware showed him where to sign, asked him to sign there, pointing to paper. * * * No one read any portion of it to us. * * * I said nothing to Mrs. Nash about the paper, nor she to me. * * * No portion of this paper was read in my hearing. No further comment or designation made further than I have said." Upon re-direct examination the witness swore: "I did not know what I was signing; had no idea what I was signing. I did not know I was signing a will. I did not understand it to be a will; I went it blind." Up re-cross-examination, after some further testimony, he says: "I will not be positive that anything else was not said. I don't recollect that there was."

The witness Guild swore that he was asked by Mr. Ware to go over to Mrs. Nash's to witness some papers, and then swears: "As we came into the dining-room, saw Mrs. Nash there. Mr. Ware produced the paper and laid it down on the table. It was this will. Mrs. Nash immediately got her glasses and pen and ink, and Mr. Ware pointed to the line indicated and told her where to sign on that line opposite to the seal; then he indicated to Mr. Newell where to sign as a witness to her signature and told me to sign it under his name, giving our post-office address. Mr. Newell and myself immediately retired from the house and left Mr. Ware and Mrs. Nash in the house. I am very positive that was all there was said or done while

I was in the house. I signed this instrument of several pages without any knowledge of what it was. As I remember it, the writing was not there above my signature when I signed it. * * * I will not swear there was a blank of two or three inches above my signature. I did not read any writing there." Upon cross-examination he further swore : " Mrs. Nash did not say anything to me or Mr. Newell before she signed the paper. She did not say anything after she signed paper and while we remained in the house. She did not read any portion of it before signing. She did not take the paper off of the table, and she signed as soon as she sat down to the table. * * * Nothing said to me, except what was said to me before I signed, except what I have stated. I read no part of the paper before I signed it. No part was read aloud by anybody in my hearing. * * * Was nothing said by any one as to this paper after I signed and before I left the room. Paper was not designated or called anything at any time by any one while I was in the room. * * * Was nothing said to me as to character of paper I was going to witness from the time Mr. Ware first spoke to me until after we had left the house." Upon re-direct examination he swears : " I do not know whether I spoke to Mrs. Nash when I entered dining-room ; cannot say whether I did or not. * * * As I remember it, she got her glasses and asked Mr. Ware where she should sign. I am very positive that was all that she said while I was in the room. I cannot remember whether she welcomed any one or spoke to any one in the room, except as I have stated. Quite probable she did. I have no recollection that she did. I am quite positive she did not say anything to anybody when we left the room."

The extracts from the testimony above given state in substance all the evidence there was as to the publication of the will by the testator. It is apparent that there was not merely a failure of recollection as to what did happen but a distinct recollection as to what did not happen. As against that distinct recollection of both witnesses to the will, that the will was not published, as required by law, I am clearly of the opinion that the attestation clause is not sufficient to prove the due execution of the will. To hold otherwise would practically nullify the purpose of the statute. There is not a word of proof that Harriet Nash knew that she executed a

will. To make clear that she did know the character of the paper she was signing is the evident purpose of the statute.

We are of opinion, therefore, that the proponent has failed to establish the execution of the will in conformity with the requirements of law and the decree of the surrogate should be reversed.

All concurred.

Decree of the surrogate reversed upon law and the facts and a trial of the following questions directed by a jury at a Trial Term of the Supreme Court to be held in the county of Essex on the third Monday in December, 1902 : *First*, did the testatrix, at the time of signing her will, declare the instrument, so subscribed by her, to be her last will and testament? *Second*, did the witnesses to the said will sign the same at the request of the testatrix? With costs to appellant to abide event, and to be paid from the estate.